IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROBERT A. WEIRICH and SANDRA F. WEIRICH, ) ) ) Plaintiffs, ) ) v. ) ) RICHARD WEHRLI and RONALD FESSLER, ) ) Defendants. ) | No. 06 C 3465 Judge Robert W. Gettleman |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Robert and Sandra Weirich have brought a six count complaint against defendants Richard Wehrli and Ronald Fessler seeking an accounting under a partnership agreement and alleging violations of the Illinois Uniform Partnership Act, breach of fiduciary duty, self dealing by Fessler, and a claim for quantum merit. The defendants have moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), arguing that plaintiffs' claims are barred by the doctrine of res judicata. For the reasons discussed below, defendants' motion is granted.

## FACTUAL BACKGROUND

Plaintiffs and defendants formed a partnership in 1994 (the "Town Road Partnership") to engage in the business of developing and selling 303 acres of real estate located on New Town Road, in North Carolina. The property was to be developed in two phases. Phase I applied to 125 of the 303 acres, and Phase II applied to the remaining 178 acres. Plaintiffs jointly owned one partnership unit and were to split equally the net profits with defendants who jointly owned the other partnership unit, until such time as contribution of capital investment amounts had been reimbursed. Thereafter, the parties were to split profits at the rate of 45% to plaintiffs and 55% to defendants.

Plaintiffs borrowed money from Merchants Bank (the "Bank") to invest in the partnership. The property did not sell as quickly as anticipated, however, and the Bank eventually brought suit against plaintiffs in the Circuit Court of Kane County, Illinois, to recover on its loan. Judgment by confession was originally entered against plaintiffs, and on December 29, 1995, confirmed by agreement the amount of $1,085,555.21. The order entering the agreed judgment provided that plaintiffs' 50% interest in the Town Road Partnership was collaterally assigned to the Bank for the purpose of collecting or enforcing the confirmed judgment. The order further provided that "all net income or proceeds of such partnership, otherwise payable to [plaintiffs], shall be paid to [the Bank]." Thus began a long and tortured history of litigation between plaintiffs, defendants, the Town Road Partnership, and the Bank, that has ultimately led to the instant lawsuit.

After plaintiffs were unable to pay the judgment, the Bank brought citation proceedings against defendants and the Town Road Partnership. On October 16, 1996, the state court ordered that defendants, or anyone acting on their behalf, "shall make no distributions from the [Town Road Partnership] to its partners [plaintiffs] of partnership income or return of capital. Any partnership distribution, after payment of normal partnership expenses, that would have gone to [plaintiffs], shall instead be paid to the [the Bank] as judgment creditor."

From that point on, the state court was involved in partnership affairs, at least with respect to the sale of the partnership real estate and distribution of income. Sometime in 2000, the Bank sought to dissolve the partnership and sell the partnership property. Both plaintiffs and defendants objected, arguing that the Bank did not have the authority to dissolve the partnership. Plaintiffs' response, however, sought an order directing defendants to account on a periodic basis

for all sums received during the course of the operation of the business. Thereafter, the court entered several agreed orders regarding payout of partnership proceeds.

On February 7, 2001, plaintiffs filed a motion to "Prohibit Use of Partnership Funds and For an Accounting and Motion to Windup Partnership Affairs and to Determine the Prospective Amount of Each Share of the Partners." In that motion, plaintiffs indicated that Phase I was fully developed and 95% of the lots had been sold. At that same time, plaintiffs brought a "Motion to Sell Phase II of the Town Road Partnership Real Estate." Plaintiffs then brought an "amended motion to sell Phase II of the Town Road Partnership real estate". In both of those motions, plaintiffs sought an order directing the sale of the Phase II property for $2,550,000 pursuant to a deal arraigned by plaintiff Robert Weirich. On May 22, 2001, the parties entered into an agreed order to sell the property pursuant to the deal arranged by Robert Weirich, with the Bank's judgment, including costs, attorney's fees and interest to be paid from plaintiffs' partnership share of the proceeds.

The Phase II property was sold pursuant to the May 22, 2001, order, and on August 13, 2001, the court ordered that plaintiffs receive $200,000 and defendants receive $453,400 from partnership funds. Then, on October 5, 2001, plaintiffs brought a "Motion to Restore Partnership Funds and to Determine the Respective Amounts of Each Share of the Partners," indicating that defendants had used plaintiffs' Phase I share to pay Phase II expenses. On October 11, 2001, the court continued the matter but ordered that "there shall be no disbursements from the partnership account without order of court or agreement of all partners."

On October 31, 2001, the case was called for trial and the parties entered into an agreed order providing that the partnership immediately disburse $440,000 to defendants and $350,000

to plaintiffs. In addition, the partnership was to immediately deed lots 15 and 16 to plaintiffs and lots 14 and 18 to defendants. For purposes of partnership distribution, plaintiffs' lots were valued at $350,000 and defendants' lots at $330,000. The partnership was ordered to render a full accounting of all cash receipts and disbursements by November 14, 2001, to all counsel. The matter was continued to November 21, 2001, to set a hearing date on matters reserved, including determination of net profits of the partnership.

It is unclear what, if anything, happened on November 21, 2001, but on February 15, 2002, plaintiffs brought another amended motion to "Restore Funds to the Partnership Account," alleging an improper payment to Fessler of $150,000 and that plaintiff Robert Weirich had performed duties for the partnership for which he had not received "extra compensation." One week later plaintiffs moved for a turnover of documents, seeking copies of all the partnership bank documents, loan documents, check stubs and contracts for sewer, water, road construction and paving. On March 25, 2002, the court ordered defendants and the partnership to produce certain documents to plaintiff by April 12, 2002, and set the case for trial on the "second stage of accounting and amended motion of turnover of funds."

On May 29, 2002, the court held an evidentiary hearing on the motion for accounting and turnover, and issued a two page order on July 19, 2002, directing Fessler to restore $150,000 to the partnership account, and requiring defendants to restore $16,000 to the partnership account. The order specifically indicated that it was without prejudice to the rights of the parties to make further claims for credits, debits or other adjustments at the final division of profits.

Apparently not content with that result, plaintiff Robert Weirich filed a new action against defendant Fessler alleging tortious interference with prospective economic advantage and

tortious interference with contractual relations, all arising out of Fessler's management of the Town Road Partnership. The case was consolidated with the Bank's action, and the trial court dismissed a second amended complaint with prejudice. Plaintiff appealed and the Illinois Appellate Court affirmed in an unpublished order.

Finally, on March 20, 2006, defendants were dismissed from the citation proceedings without prejudice. On July 6, 2006, the state court entered judgment in favor of the Bank against plaintiffs pursuant to the Bank's motion for summary judgment. The ordered indicated that it was final and immediately appealable. Plaintiffs took no appeal, ending the state court litigation.

## **DISCUSSION**

In the instant case, plaintiffs seek an accounting of all profits earned by the partnership during its existence, challenge the sale of the Phase II property, and again allege self dealing by Fessler.

Defendants have moved to dismiss, arguing that plaintiffs' claim are barred by res judicata. Res judicata is an affirmative defense dependent upon the Full Faith and Credit Statute, 28 U.S.C. § 1738, which requires federal courts to give a state court judgment the same preclusive effect it would have in state court. Long v. Shorebank Development Corp., 182 F.3d 548, 560 (7th Cir. 1999). "When the state judgment would not preclude litigation in state court of an issue that turns out to be important to a federal case, the federal court may proceed; otherwise not." Id. (quoting Gash Assoc. v. Village of Rosemont, 995 F.2d 726, 728 (7th Cir. 1993)). Because an Illinois court rendered the orders at issue, this court must apply Illinois law to determine whether res judicata bars plaintiffs' claims. Id.; 4901 Corp. v. Town of Cicero, 220 F.3d 522, 529 (7th Cir. 2000).

5

Under Illinois law, the doctrine of res judicata provides that "a final judgment on the merits is conclusive as to the rights of the parties, and constitutes an absolute bar to a subsequent action involving the same claim, demand or causes of actions." Long, 182 F.3d at 560. For the doctrine to apply three requirements must be satisfied: (1) a final judgment on the merits rendered by a court of competent jurisdiction; (2) an identity of causes of action; and (3) identity of the parties or privies.

In the instant case there is no question as to elements (2) and (3). Certainly all of the parties to the instant action were parties to and appeared and participated in the state court actions and supplemental proceedings. Additionally, all plaintiffs' claims in the instant case could have and in fact were raised in the state court actions. Indeed, all the relief demanded of defendants in the instant case was sought by plaintiffs repeatedly in the state court litigation. For example, Counts I, II and IV of the instant case seek an accounting as to partnership profits, losses and affairs, something raised by plaintiffs in the state court any number of times over the eleven years of litigation. In fact, every partnership distribution made since 1995 was done pursuant to orders of the state court, most, if not all of which, were agreed to by plaintiffs.

Additionally, res judicata bars not only claims that were brought, but those who could have been brought. 4901 Corp., 220 F.3d at 530. Illinois uses a "transactional test" to determine what claims could have been brought in a prior action for res judicata's identity of causes of action component. Id. Under this approach a claim is viewed in factual terms and is considered co-terminus with the transaction regardless of the number of substantive theories that may be available to plaintiffs, and regardless of the variations in the evidence needed to support the

theories or rights. Under this test, there can be no doubt that all of plaintiffs' claims for accounting either were or could have been raised in the state court litigation.

Count III, alleging a breach of fiduciary duty by Fessler, is premised on the notion that the Phase II property was sold for a commercially unreasonable amount. Indeed, the count actually alleges that "plaintiffs were aware of sales of Phase II property yet were never allowed input on the eventual sale of Phase II property." This issue was not only raised in the state court, but the Phase II property was sold by order of the state court pursuant to plaintiffs' motion, over objection by defendants. Plaintiffs cannot now be heard to complain about a sale they forced.

Plaintiffs main attack against the application of res judicata is based on their argument that the state court lacked subject matter jurisdiction and could not render a valid and final judgment. According to plaintiffs, because the state court proceedings were supplementary under 735 ILCS 5/2-1402, the court lacked subject matter jurisdiction over partnership matters or the partnership land "except in the ordering of the payment of [plaintiffs'] partnership proceeds to the creditor bank."

This is, as defendants point out, a rather curious argument since the Illinois courts are courts of general rather than limited jurisdiction. See Aldinger v. Hallard, 427 U.S. 1, 14-15 (1976); Bellville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc., 199 Ill.2d 325, 334 (2002)(Circuit Court's jurisdiction extends to all justiciable matters). To support this rather novel argument, plaintiffs cite to a number of cases that stand for the very mundane proposition that a judgment creditor may not proceed with supplemental proceedings against a third party without some evidence that the third party possesses assets of the judgment debtor. Only then does the citation court have the jurisdiction to order that party to produce those assets to satisfy

the judgment. If the third party has no assets of the judgment debtor, then the court has no authority to enter any judgment against the third party in a supplemental proceedings. See Ericksen v. Rush Presbyterian St. Luke's Medical Center, 289 Ill.App.3d 159, 166-67 (1st Dist. 1997) (and cases cited therein).

In the instant case, plaintiffs admit that the "Bank properly summoned the partners as citation respondents in order to retrieve assets from the [plaintiffs] . . .." Once the state court determined that the citation respondents controlled assets that may be subject to the judgment, the court had jurisdiction to adjudicate the rights of all interested parties. Under Illinois law, once it appears that any property discovered is claimed by any person other than the judgment debtor, the court must permit or require that the claimant appear and maintain his rights. Any interested party may subpoena witnesses and introduce evidence as upon the trial of any civil action. O'Connell v. Pharmaco, Inc., 143 Ill.App.3d 1061, 1067 (4th Dist. 1996).

Plaintiffs argue that "issues of liability and accounting between partners have no place in supplemental proceedings," relying on Johnson v. St. Theresa Medical Center, 296 Ill.App.3d 341, 347-48 (2d 1998). Once again, plaintiffs' reliance is misplaced. Johnson, like Ericksen, stands for the proposition that supplementary proceedings can be brought only against a party who possesses an interest in assets subject to the judgment. Id. In Johnson, the judgment debtor was a partnership. The judgment creditor brought supplemental proceedings against the individual partners seeking to collect from their personal assets, rather than from assets of the partnership. The court held that procedure may be improper because, under Illinois law, "a judgment entered against a partnership in its firm name is enforceable only against the property of the partnership." Id. (quoting 735 ILCS 5/12-102). Because there was no evidence that the individual partners held assets that belonged to

the partnership, the supplemental proceedings were improper. Id. In contrast, in the instant case, the judgment debtor is an individual partner and the other partners and the partnership had interests in assets subject to the judgment. Therefore, plaintiffs' argument that the state court lacked jurisdiction to hear and decide the partnership issues that plaintiffs themselves raised is without merit.

Finally, plaintiffs argue that the orders entered by the state court relating to the partnership have no res judicata effect because they were entered by agreement and the court did not exercise the judicial function of deciding the issues. See Nelson v. Joliet Trust & Savings Bank, 315 Ill.App. 11, 14 (3rd Dist. 1942). Plaintiffs are simply wrong. Illinois courts are "generally in agreement that a consent decree operates to the same extent for res judicata purposes as a judgment entered after contest and is conclusive with respect to the matters which were settled by the judgment or decree." City of Mattoon v. Mentzer, 282 Ill.App.3d 628, 635 (4th Dist. 1996)(and cases cited therein).

All the claims raised in the instant complaint were raised, litigated and resolved in the state court action. Both those actions have been terminated, final orders entered and the cases closed. Because plaintiffs' claims are barred by res judicata, defendants' motion to dismiss is granted.

## CONCLUSION

For the reasons set forth above, defendants' motion to dismiss is granted.

**ENTER:** **August 16, 2007**

_____
**Robert W. Gettleman**
**United States District Judge**

9